```
                                              CLERK'S OFFICE U.S. DISTRICT COURT
                                                  AT ROANOKE VA. - FILED
                                                      APR 16 2008
        IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF VIRGINIA    JOHN F. CORCORAN, CLERK
                 HARRISONBURG DIVISION         BY: /s/ DEPUTY CLERK
```

RICHARD J. MORVILLO, )
)
    Plaintiff, ) Civil Action No. 5:07CV00046
)
v. ) **AMENDED MEMORANDUM OPINION**
)
SHENANDOAH MEMORIAL ) By: Hon. Glen E. Conrad
HOSPITAL, et al., ) United States District Judge
)
    Defendants. )

Richard J. Morvillo filed this diversity action against Shenandoah Memorial Hospital, Valley Health System, Audrea H. Wynn, II, M.D., Jonathan F. O'Neal, M.D., and Stephen Palmerton, seeking recovery for injuries that Morvillo sustained during an anesthetic procedure performed on June 30, 2005. On January 28, 2008, the hospital, Valley Health System, and Dr. Wynn were non-suited from the case, leaving only Dr. O'Neal and Palmerton. Dr. O'Neal and Palmerton have now filed motions for partial summary judgment as to the plaintiff's battery claim. Additionally, Dr. O'Neal has filed a motion for partial summary judgment as to the plaintiff's claim for negligent treatment. The case is presently before the court on those motions, as well as the plaintiff's motion for leave to file a second amended complaint. For the reasons stated, the defendants' motions for partial summary judgment as to the plaintiff's battery claim will be granted, Dr. O'Neal's motion for partial summary judgment as to the plaintiff's negligent treatment claim will be granted in part and denied in part, and the plaintiff will be granted leave to file a second amended complaint that asserts a claim for vicarious liability against Dr. O'Neal.

## Factual and Procedural Background

On June 30, 2005, Dr. Wynn operated on the plaintiff's right rotator cuff at Shenandoah Memorial Hospital. The rotator cuff surgery was performed under interscalene block anesthesia. In his first amended complaint, the plaintiff alleges that he sustained an injury to his phrenic nerve during the administration of the anesthesia, and that the anesthesia was administered by Dr. O'Neal, the anesthesiologist at the hospital, or Palmerton, a certified registered nurse anesthetist ("CRNA"). The plaintiff further alleges that the injury to his phrenic nerve resulted in the paralysis of his right diaphragm.

The plaintiff's amended complaint asserts three claims against Dr. O'Neal and Palmerton under Virginia law. In Count I, the plaintiff alleges that Dr. O'Neal and/or Palmerton failed to provide the applicable standard of care and were negligent in the way that they treated the plaintiff, in that Dr. O'Neal and/or Palmerton crimped, bent, burst, and/or severed the plaintiff's phrenic nerve during the administration of the interscalene block. In Count III,[1] the plaintiff alleges that the defendants acted negligently, in that they failed to inform him of the risks associated with the interscalene block. In Count IV, the plaintiff asserts a claim for battery.

On January 24, 2008 and January 25, 2008, respectively, Dr. O'Neal and Palmerton moved for partial summary judgment with respect to the plaintiff's battery claim. On February 13, 2008, Dr. O'Neal filed a motion for partial summary judgment as to the plaintiff's negligent treatment claim. In response to that motion, the plaintiff filed a motion for leave to file a second amended complaint that asserts a claim for vicarious liability against Dr. O'Neal. The court held a hearing on the parties' motions on March 24, 2008. The motions are now ripe for review.

---

[1] Counts III and IV are misnumbered in the plaintiff's amended complaint.

2

## Standard of Review on Summary Judgment

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

### I. Plaintiff's Battery Claim

To support his claim for battery, the plaintiff alleges that the defendants failed to obtain his consent prior to the administration of the interscalene block. The plaintiff also alleges that the defendants failed to obtain his informed consent.

Under Virginia law, which governs this diversity action, the tort of battery is "an unwanted touching which is neither consented to, excused, nor justified." Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003). The Supreme Court of Virginia has recognized that the relationship between a physician and a patient is a consensual one. Washburn v. Klara, 561 S.E.2d 682, 685 (Va. 2002). Thus, "unless an emergency or unanticipated problem arises, a physician or surgeon must first obtain the consent of a patient before treating or operating on that patient." Id. In the absence of an unanticipated problem or emergency, a medical procedure or

3

operation performed without a patient's consent constitutes a "technical" battery. Id. (internal citations and quotations omitted); see also Pugsley v. Privette, 263 S.E.2d 69, 74 (Va. 1980) ("A surgical operation on the body of a person is a technical battery or trespass unless he or some authorized person consented to it.") (internal citations, quotations, and alterations omitted). A technical battery also occurs when a medical procedure is performed that exceeds the scope of a patient's consent, or a medical procedure is continued after a patient's consent has been unequivocally withdrawn. See Washburn, 561 S.E.2d at 686 (battery claim predicated on the allegation that the defendant exceeded the scope of the plaintiff's consent by performing a diskectomy at the C7-T1 level of the plaintiff's spine, even though she only consented to a diskectomy at the C6-7 level); Woodbury v. Courtney, 391 S.E.2d 293, 294 (Va. 1990) (battery claim predicated on the assertion that the defendant exceeded the scope of the plaintiff's consent to a breast biopsy by ultimately performing a partial mastectomy); Pugsley v. Privette, 263 S.E.2d at 74-76 (battery claim predicated on the assertion that the plaintiff withdrew her consent prior to surgery, and thus, that she was operated on by a surgeon without her consent).

In moving for partial summary judgment as to this claim, both Dr. O'Neal and Palmerton argue that it is clear from discovery that the plaintiff has no evidence to support the allegation that the interscalene block was performed without the plaintiff's consent, and that the only evidence on this issue is to the contrary. The defendants have submitted a copy of an "anesthesia pre-op" form, dated June 30, 2005. Both the defendants and the plaintiff signed and/or initialed the form, confirming that the plaintiff would be undergoing an "ISB [with] sed," or interscalene block with sedation, and that the plaintiff was "informed of [the] risks and benefits of [the] proposed plan." (O'Neal Mot. for Partial Summ. J. Ex. 3; Palmerton Mot. for Partial Summ. J.

4

Ex. 3). During his deposition, the plaintiff testified that he did not recall reviewing the form or discussing any potential risks or benefits associated with the anesthetic procedure.[2] (Morvillo Dep. at 89-92). Nonetheless, the plaintiff acknowledged that the form contains his initials. (Morvillo Dep. at 92).

In response to the defendants' motions for partial summary judgment, the plaintiff does not dispute the fact that he initialed the anesthesia pre-op form. Instead, the plaintiff argues that the form does not comply with the Virginia licensing regulation pertaining to "informed consent" for office-based anesthesia, 18 Va. Admin. Code § 85-20-350,[3] and that the mere fact that he initialed the form is insufficient to establish that he was adequately informed of the risks associated with the interscalene block. The failure to obtain a patient's <u>informed</u> consent, however, is a separate and distinct claim, and the court agrees with the defendants that such

---

[2] The court notes that the plaintiff was also unable to recall whether or not he spoke to Dr. O'Neal or Palmerton, or whether the interscalene block was administered prior to surgery. (Morvillo Dep. at 32).

[3] Section 85-20-350 states as follows:

> Informed consent.
>
> Prior to administration, the anesthesia plan shall be discussed with the patient or responsible party by the health care practitioner administering the anesthesia or supervising the administration of anesthesia. Informed consent for the nature and objectives of the anesthesia planned shall be in writing and obtained from the patient or responsible party before the procedure is performed. Informed consent shall only be obtained after a discussion of the risks, benefits, and alternatives, contain the name of the anesthesia provider and be documented in the medical record.

5

claim sounds solely in negligence. As the United States District Court for the Eastern District of Virginia explained in Dessi v. United States,

> Although in a few jurisdictions performance of surgery without obtaining the informed consent of the patient is actionable under an assault and battery theory, it is clear that in Virginia the action is one for negligence in failing to adhere to the proper standard of care.

Dessi, 489 F. Supp. 722, 727 (E.D. Va. 1980) (citing Bly v. Rhoads, 222 S.E.2d 783 (Va. 1976); Lane v. United States, 225 F. Supp. 850 (E.D. Va. 1964)); see also Tashman v. Gibbs, 556 S.E.2d 772, 777 (Va. 2002) (explaining that "[a] physician has a duty in the exercise of ordinary care to inform a patient of the dangers of, possible negative consequences of, and alternatives to a proposed medical treatment or procedure," and that "[a] physician's duty of disclosure is defined with reference to the appropriate standard of care"); DeRosa v. Meloni, 14 Va. Cir. 62, 64 (Va. Cir. Ct. 1988) ("In Virginia, a physician's failure to obtain the informed consent of a patient is actionable as a cause of action for negligence based on the doctor's alleged failure to adhere to the proper standard of care.").

In response to the defendants' motions, the plaintiff contends that Virginia does not recognize a distinction between the absence of consent and the absence of informed consent for purposes of a claim for battery, citing Rizzo v. Schiller, 445 S.E.2d 153 (Va. 1994). In Rizzo, however, the Supreme Court of Virginia considered "whether the plaintiffs presented sufficient evidence to establish a prima facie case of medical malpractice against a physician who allegedly failed to obtain the mother's informed consent to use obstetrical forceps to deliver her baby," Id. at 154; the case did not involve a claim for battery. Upon reviewing the plaintiffs' evidence in Rizzo, the Supreme Court concluded that the plaintiffs presented sufficient evidence to establish

6

that the physician failed to obtain the mother's informed consent. Id. at 155.  Although the mother signed a document that purportedly was a consent form, the form did not identify the specific procedures that the doctor planned to perform or inform the mother of the foreseeable risks. Id. The Supreme Court ultimately held that "the duty imposed upon a physician to obtain a patient's informed consent requires more than simply securing the patient's signature on a generalized consent form . . . ." Id. While the Supreme Court went on to note that "[t]he law requires informed consent, not mere consent," and that "the failure to obtain informed consent is tantamount to no consent," Id. at 156, the Court did not address the issue of whether the failure to obtain a patient's informed consent may give rise to a claim for battery. Accordingly, the court is unable to conclude, on the basis of Rizzo, that a claim for battery may be predicated on the failure to obtain a patient's informed consent.

Having determined that the plaintiff's informed consent claim sounds only in negligence, the court concludes that the defendants are entitled to partial summary judgment with respect to the plaintiff's claim for battery. It is undisputed that the plaintiff initialed the anesthesia pre-op form, confirming that he would be undergoing an interscalene block with sedation, and the plaintiff has provided no evidence to establish that he did not consent to the performance of that anesthetic procedure. Likewise, there is no evidence that the plaintiff withdrew his consent prior to the performance of the interscalene block, see Washburn and Woodbury, supra, or that another type of anesthesia was administered which was different from that indicated on the anesthesia pre-op form, see Pugsley, supra. Accordingly, in the absence of such evidence, the court will grant the defendants' motions for partial summary judgment as to the plaintiff's battery claim.

7

## II. Plaintiff's Negligent Treatment Claim

Dr. O'Neal has also moved for partial summary judgment with regard to the plaintiff's negligent treatment claim. To support this claim, the plaintiff alleges in his first amended complaint that the defendants had a duty to provide the applicable standard of care, and that Dr. O'Neal and/or Palmerton breached the applicable standard and were "negligent in the way they cared for and treated Plaintiff in that they . . . crimped, bent, burst, and/or severed the [plaintiff's] phrenic nerve." (Am. Compl. at ¶ 20).

In moving for partial summary judgment as to this claim, Dr. O'Neal points to the uncontradicted deposition testimony indicating that it was Palmerton, rather than O'Neal, who performed the anesthetic procedure. Although neither Dr. O'Neal nor Palmerton specifically remembers the plaintiff, both defendants testified that the plaintiff's medical records indicate that Palmerton administered the interscalene block. (O'Neal Dep. at 37-38; Palmerton Dep. at 32).

In response to Dr. O'Neal's motion, the plaintiff "readily concedes that the evidence is that probably the interscalene block was performed by Mr. Palmerton" and that "Dr. O'Neal cannot be held directly responsible for the negligence in the performance of the interscalene block." (Pl.'s Br. in Opp. at 4-5). Consequently, Dr. O'Neal is clearly entitled to partial summary judgment to the extent that the plaintiff claims that Dr. O'Neal personally provided negligent treatment.

Nonetheless, the plaintiff has filed a motion for leave to file a second amended complaint that asserts a claim for vicarious liability against Dr. O'Neal under the theory of respondeat superior. The plaintiff asserts that the requested amendment would "comport to the discovery

8

which indicates that Defendant Palmerton was for purposes of this case the 'employee' or authorized agent of . . . Defendant O'Neal, acting within the scope of his employment." (Pl.'s Br. in Opp. at 6).

Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may only amend a pleading with the court's leave or the opposing party's written consent. The rule further provides that leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The United States Court of Appeals for the Fourth Circuit has interpreted "[t]his liberal rule" to "provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

Applying this liberal standard, the court is unable to conclude that allowing the plaintiff to amend his complaint would prejudice Dr. O'Neal, and there is no evidence of bad faith on the part of the plaintiff. Additionally, for the following reasons, the court disagrees with Dr. O'Neal's assertion that the requested amendment would be futile.

The Supreme Court of Virginia has identified four factors that are relevant to the determination of whether a master-servant relationship exists for purposes of the doctrine of respondeat superior: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power of control. Naccash v. Burger, 290 S.E.2d 825, 832 (Va. 1982). "The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." Id. (holding that the evidence supporting the fourth factor, power of

9

Case 5:07-cv-00046-GEC-BWC   Document 215   Filed 04/16/08   Page 9 of 13   Pageid#: 2044

control, was sufficient to support the jury's finding that a master-servant relationship existed between a physician and a laboratory technician); see also Schwartz v. Brownlee, 482 S.E.2d 827, 829 (Va. 1997) (holding that the evidence of a defendant's power of control over a physician was sufficient to support the trial court's finding, as a matter of law, that an agency relationship existed between the defendant and the physician); Boyd v. Bulala, 877 F.2d 1191, 1197 (4th Cir. 1989) (holding that the evidence of the physician's power of control "was sufficient to justify the district court's instruction on agency and its submission of that issue to the jury").

In this case, the evidence reveals that in June of 2005, Dr. O'Neal was the only anesthesiologist at Shenandoah Memorial Hospital. (O'Neal Dep. at 12). The hospital also had two CRNAs, Palmerton and Suzie Wang. (O'Neal Dep. at 19). The applicable Virginia licensing regulation "requires that a CNRA be under the direction and supervision of a licensed physician when administering anesthesia." Blevins v. Sheshadri, 313 F. Supp. 2d 598, 600 (W.D. Va. 2004) (citing 18 Va. Admin. Code § 90-30-120).[4] Consistent with this requirement, Dr. O'Neal testified that he supervises the CRNAs. (O'Neal Dep. at 36). Likewise, Palmerton testified that he works under the supervision of Dr. O'Neal, unless "it's after hours and Dr. O'Neal has gone home." (Palmerton Dep. at 35). In such case, Palmerton works under the supervision of the surgeon performing the procedure for which anesthesia is required. (Palmerton Dep. at 35).

During their depositions, both defendants testified regarding the nature of their working relationship. Dr. O'Neal testified that he is "immediately available to [the CRNAs] while they

---

[4] Section 90-30-120 provides that "[a] certified registered nurse anesthetist shall practice . . . under the medical direction and supervision of a doctor of medicine or a doctor of osteopathy . . . ."

10

are preopping and during surgery and in the post-operative procedure," and that he reviews the patients' medical records with the CRNAs prior to the administration of the anesthesia. (O'Neal Dep. at 30-31). Dr. O'Neal testified that the hospital has two primary operating rooms, and that he goes back and forth between the two rooms when the CRNAs are handling the anesthetic procedures. (O'Neal Dep. at 33-34). Dr. O'Neal further testified that "[m]any times [he] will assist with anything that [the CRNAs] are doing." (O'Neal Dep. at 30).

Palmerton, during his deposition, testified regarding the pre-operative interview process. (Palmerton Dep. at 37). When Palmerton performs the pre-operative interview alone, "Dr. O'Neal will come in behind [Palmerton], introduce himself to the patient, tell [the patient] who he is, look over the chart, ask the patient if they have any questions or any concerns, [and] if [Palmerton has] explained everything appropriately . . . ." (Palmerton Dep. at 37). After Dr. O'Neal speaks with the patient, and "if he agrees with [Palmerton], he talks to [Palmerton] about the particular type of anesthetic . . . chosen, . . . and then will sign the chart at that point." (Palmerton Dep. at 37) (emphasis added).

With regard to the procedure at issue in this case, the evidence reveals that Dr. O'Neal was on duty when Palmerton administered the interscalene block on June 30, 2005, and that Palmerton was working under his supervision. The operating room schedule from that date indicates that Dr. O'Neal and Palmerton were assigned to the plaintiff's case,[5] and both Dr. O'Neal and Palmerton signed the plaintiff's anesthesia pre-op form. Based on the fact that the form contains his signature and the fact that he routinely speaks with patients prior to surgery, Dr. O'Neal testified that he most likely spoke with the plaintiff prior to the plaintiff's surgery.

---

[5] The schedule includes the initials "JO" and "SP" next to the entry for the plaintiff's surgery. (O'Neal's Supplemental Mem. Ex. 3).

11

(O'Neal Dep. at 37, 51). Dr. O'Neal also testified that he "would have been in and out" of the plaintiff's operating room. (O'Neal Dep. at 62).

Considering the evidence in the light most favorable to the plaintiff, the court finds that a genuine issue of material fact exists as to whether Dr. O'Neal had the power to exercise control over Palmerton on June 30, 2005, which would thereby give rise to a master-servant relationship. It is clear from the evidence that Dr. O'Neal supervised Palmerton on that date. Additionally, the evidence indicates that Dr. O'Neal most likely met with the plaintiff, reviewed the plaintiff's chart, and discussed the proposed anesthetic plan with Palmerton. While the evidence also suggests that Dr. O'Neal ultimately agreed with the proposed anesthetic plan, a reasonable juror could find, on the basis of Palmerton's deposition testimony, that Dr. O'Neal had the power to select a different type of anesthesia had he disagreed with that proposed by Palmerton. Based on the foregoing, the court finds that the evidence is sufficient to warrant submitting the issue of vicarious liability to the jury. Compare Lilly v. Brink, 52 Va. Cir. 182, 185 (Va. Cir. Ct. 2000) (holding that the evidence was sufficient, on summary judgment, to satisfy the power of control factor for purposes of vicarious liability, where an attending physician reviewed a resident physician's patient charts and had the power to order the resident to change a course of treatment) with Prosise v. Foster, 544 S.E.2d 331, 334 (Va. 2001) (holding that an on-call attending physician was not subject to liability for the negligent acts of resident physicians, where there was no evidence that the attending physician had direct contact with the patient, participated in treatment decisions, or was consulted by the resident physicians regarding the patient's condition, and the record contained no information regarding the duties of attending physicians). Accordingly, the plaintiff will be granted leave to file a second amended complaint

12

that asserts a claim for vicarious liability against Dr. O'Neal based on the doctrine of respondeat superior, and Dr. O'Neal's motion for partial summary judgment will be denied as to this issue.

## Conclusion

For the reasons stated, the defendants' motions for partial summary judgment as to the plaintiff's battery claim will be granted, and Dr. O'Neal's motion for partial summary judgment as to the plaintiff's negligent treatment claim will be granted in part and denied in part. Additionally, the court will grant the plaintiff's motion for leave to file a second amended complaint.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 15th day of April, 2008.

_____
United States District Judge